## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | |
|---|---|
| DYLAN KAGLEY,<br><br>               Plaintiff,<br><br>     vs.<br><br>FUTURE MOTION, INC.,<br><br>              Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Dylan Kagley ("Plaintiff"), by and through his undersigned counsel, hereby submits the following Complaint and Demand for Jury Trial against Defendant Future Motion, Inc. ("Defendant" or "Future Motion"), and alleges the following, based upon personal knowledge and belief, as well investigation by his attorneys:

## NATURE OF THE CASE

1. Defendant is a company that manufacturers skateboard-like devices, which operate like a unicycle, and these devices are referred to as OneWheels ("OneWheels" or "Devices").[1] As discussed in detail herein, these devices are extremely dangerous and all OneWheel devices have been recalled.[2]

2. These Devices are quite different than the normal skateboard, as they have one centered wheel, rather than four wheels, like the traditional skateboard.[3] Also, most notably for

---

[1] https://www.cpsc.gov/Recalls/2023/Future-Motion-Recalls-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Crash-Hazard-Four-Deaths-Reported
[2] *Id*.
[3] https://onewheel.com/

purposes of propulsion and actual movement, these Devices are battery powered, similar to an electric scooter.[4]

3.      Defendant's marketing and promotion of these devices also promotes the ease of use. Defendant's homepage, in big white letters, states: "STOP THINKING START RIDING."[5]

4.      Further, Defendant's website states the top speeds of its Devices, with a top speed of 16-20 miles per hour.[6] A user does not need to push off the ground or pedal, as the Device is self-propelled and self-balancing.[7] Defendant's Devices have several methods of failure, of particular note is the nosedive style of failure, in which the Device suddenly nose dives, launching the User forward. The Devices will sporadically lose balance in many different settings, and thus, are extremely dangerous.[8]

5.      The act or art of using the self-propelled Device is a dangerous and convoluted process. To begin with, a user must achieve proper balance on the board, which in itself poses a considerable risk of falling. Defendant suggests that "a friend" is needed to lean on for balancing when first mounting the board.[9] See below:

(space intentionally left blank)

---

[4] https://onewheel.com/
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] https://www.cpsc.gov/Recalls/2023/Future-Motion-Recalls-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Crash-Hazard-Four-Deaths-Reported
[9] https://onewheel.com/pages/basic-operation

2

## Basic Operation



Switch to Onewheel+ using power switch on the side.

Step fully and firmly on both sides of the blue dividing line.



Always wear a helmet.

Lean on a friend to get started.

Slowly come up for balance.



Onewheel+ will engage when you reach a horizontal orientation.

Lean forward to accelerate.

Lean back to slow down.

Lean side-to-side to turn.



Slow down to < 1 mph and with your toe planted, lift your heel from one side of the rider dtection area.

You can also jump off with both feet, but never remove only one foot.

6.      Defendant's own instructions foretell danger. See below[10]:

### REGENERATIVE BRAKING

Decelerating while going downhill recharges the Onewheel+ battery.

⚠ WARNING Riding hills exceeding a 15% grade is extremely dangerous and may result in loss of control or damage to your Onewheel+.





7.      Defendant's Devices deviate from the typical features of other analogous transportation devices. As is well documented, many skateboard riders enjoy downhill riding,

---

[10] https://onewheel.com/pages/basic-operation

especially steep hills. Defendant knew or should have known of such a similar risk of use associated with its own Devices.[11]

8.     And further, Defendant even promotes riding downhill on its own website through marketing and images[12]:



---

[11] https://www.newyorker.com/culture/video-dept/the-rush-and-risk-of-skateboarding-san-franciscos-hills

[12] https://onewheel.com/



9.     Seen from above is Defendant's own incongruence between its Device's safety and limits and its marketing.

10.     The operation of Defendant's balancing system is convoluted, and a User cannot easily reposition their foot while riding or dismount the Device while maintaining balance, as illustrated below:[13]

(space intentionally left blank)

---

[13] https://onewheel.com/pages/basic-operation

# UNDERSTANDING THE FOOTPAD

The front footpad is pressure sensitive and divided into two zones - one on each side of the central line. Both zones must be pressed to begin riding. To stop, slow to a standstill and then remove your feet from one/both zones.

✓ TIP: Avoid repositioning your foot while riding.



11. As illustrated above, when a user attempts to dismount by lifting their foot, the board will lose its balance.

12. Further, it is crucial to note that the Device will deactivate its balancing system if a User's foot does not precisely activate the OneWheel's system.

13. While this may not appear to be an issue, it is a common practice in the skateboarding community to have mobile feet for the purpose of maintaining balance.[14]

---

[14] https://stokedrideshop.com/blogs/stoked-school/where-to-place-feet-on-a-skateboard

6

14.     Additionally, it is foreseeable that someone's foot would shift when riding over rocky or uneven terrain as pictured in Defendant's advertising, in addition to the previous photos, as shown below:[15]



15.     In addition to its own website marketing, Defendant encourages users to do stunts and tricks on their OneWheel. Many of these tricks deviate from proper guidelines and instruct users to lift their feet completely off the OneWheel, consequently deactivating the balancing system.[16] See below:

---

[15] https://onewheel.com/
[16] https://www.facebook.com/reel/639982934458981



16.     OneWheel promotes the removal of the User's feet throughout its other social

medias, such as TikTok[17].

---

[17] https://www.tiktok.com/t/ZT8roBDMK/



Case 1:23-cv-00324-MOC-WCM    Document 1    Filed 11/08/23    Page 9 of 41

17.     In further detail, the "Shuv it" trick described above requires a user to jump up, spin the board around, and then land congruently onto a presumably unbalanced surface (the board itself). And, once again, Defendant's Devices have only one wheel, and are therefore not inherently balanced like typical four-wheel skateboards.

18.     On one hand, Defendant emphasizes the importance of Users being extremely careful and always keeping their feet on the Device. However, through its marketing, Defendant tells users to jump off of the Device while spinning it underneath them. This conflicting message is deeply concerning, especially when considering that children are a significant and, most importantly, foreseeable user and demographic of this Device, particularly through social media.[18]

19.     Expanding on the previous point regarding steep terrain, in Paragraph 8, OneWheel promotes steep climbs and descents. In a TikTok video posted on May 25th, 2022, OneWheel encourages users to climb steep streets. The TikTok is promoted as "OneWheel GT vs. the steepest streets in San Francisco". And the official title is "GT vs. hills. Who wins?".[19] The video displays users climbing the many hilly streets of San Francisco, as seen below:[20]


(space intentionally left blank)


---

[18] https://www.ksl.com/article/50512530/how-hard-is-it-to-ride-a-onewheel-and-are-they-safe-for-kids ; https://www.aacap.org/AACAP/Families_and_Youth/Facts_for_Families/FFF-Guide/Social-Media-and-Teens-100.aspx
[19] https://www.tiktok.com/t/ZT8roff2n/
[20] Id.











20.     OneWheel also promotes downhill use of its items via TikTok, stating: "Still can't believe this worked"[21]



---

[21] https://www.tiktok.com/t/ZT8rofo14/ ; https://www.tiktok.com/t/ZT8roaYeH/ ; https://www.tiktok.com/t/ZT8h1d986/





21.     As can be reasonably inferred from the above, the Devices are indeed extremely dangerous. This has been noted multiple times by the Consumer Product Safety Commission (CPSC). In November of 2022, the CPSC issued a warning regarding the Devices' safety.[22] The Devices were recalled on September 29th, 2023.[23]

22.     Defendant protested the danger of the Devices via TikTok as well.[24] In Defendant's TikTok post, the speaker asks for support from TikTok, and declares the CSPC as "government overreach".[25]

23.     Regrettably, for the consuming public, the preventative measures taken were neither implemented soon enough nor with sufficient severity. Defendant's Devices tragically killed four individuals due to head trauma resulting from complications associated with the Device's balancing and propulsion systems.[26]

24.     The CPSC, in its September 2023 recall, stated: "Future Motion has received dozens of reports of incidents involving the electric skateboards, including four reported deaths between 2019 and 2021 and injuries such as traumatic brain injury, concussion, paralysis, upper-body fractures, lower-body fractures and ligament damage. The reported deaths resulted from head trauma and, in at least three of those incidents, the rider was not wearing a helmet. Future Motion and the CPSC encourage all riders to wear personal protective equipment while riding."[27]

---

[22] https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Warns-Consumers-to-Stop-Using-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Ejection-Hazard-At-Least-Four-Deaths-and-Multiple-Injuries-Reported
[23] https://www.cpsc.gov/Recalls/2023/Future-Motion-Recalls-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Crash-Hazard-Four-Deaths-Reported
[24] https://www.tiktok.com/t/ZT8rokyXo/
[25] Id.
[26] https://www.cpsc.gov/Recalls/2023/Future-Motion-Recalls-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Crash-Hazard-Four-Deaths-Reported
[27] https://www.cpsc.gov/Recalls/2023/Future-Motion-Recalls-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Crash-Hazard-Four-Deaths-Reported

25.     The content and evidence above is not out of the norm for Defendant. In 2018,

Defendant marketed itself heavily, see below[28]:



---
[28] https://web.archive.org/web/20181101015459/https://onewheel.com/















## PARTIES

26. Plaintiff Dylan Kagley is citizen of North Carolina. Plaintiff is domiciled in Buncombe County, North Carolina.

27. Plaintiff is a purchaser of Defendant's Devices, suffered personal injuries and economic loss because of Defendant's Devices. Plaintiff has suffered severe cuts and scrapes from his incident and has spent significant time and resources in dealing with his injuries.

28. Defendant is a citizen of California, with its principal place of business located at 1201 Shaffer Rd Unit N, Santa Cruz, California, 95060.

29.     Plaintiff and Defendant are of diverse citizenship, with Plaintiff being a citizen of North Carolina and Defendant being a citizen of California.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332 as the amount in controversy is greater than $75,000 and there is complete diversity between the parties.

31.     This Court has personal jurisdiction over Defendant as Defendant has purposefully availed itself to the laws of this District and Defendant has sufficient minimum contacts with this District. Defendant has marketed and sold Devices throughout this District. Defendant orchestrates and operates a website that sells Devices throughout this District.

32.     Venue is appropriate pursuant to 28 U.S.C. 1391(b) as the acts and omissions leading to the incident occurred within this District.

## FACTUAL BACKGROUND

33.     In or around April 2020 Plaintiff purchased a OneWheel Pint Model.

34.     Plaintiff purchased the Device online.

35.     Plaintiff used this Device in or around April of 2020.

36.     Plaintiff used the Device as intended and instructed, but experienced a typical "Nosedive" defect, common with these Devices. While traveling roughly 20 miles per hour, Plaintiff experienced a nosedive type of defect.

37.     Plaintiff suffered injuries due to the Device's faulty systems.

38.     Specifically, Plaintiff suffered injuries in that he experienced severe road rash. Additionally, Plaintiff suffered economic loss due to his purchase of the Device.

39.     Plaintiff has spent significant resources and time in attending to his injuries.

**The Defect's Role in Plaintiff's Injury**

40.     Plaintiff lost control of his Device due to experiencing one of the many defects inherent with the Device.

41.     As a result of the loss of control and the experience of a defect, Plaintiff fell.

42.     As a result of the falling, Plaintiff suffered injuries.

43.     All of Plaintiff's injuries have been directly caused by the defect and inoperable and unsafe Devices.

**Defendant's Response To Allegations of Unsafe Devices**

44.     Defendant OneWheel has faced significant backlash for the safety of its Devices and still refuses to acknowledge the inherent dangers associated with its Devices.

45.     In their social media messaging, Defendant protests the danger of its Devices.[29]

*Defendant's initial notice of the dangerous nature of the Devices, accompanying Class Action Lawsuit*

46.     Although many persons were injured prior to 2021, in 2021, Defendants were put on notice of their dangerous product as they were sued.[30]

47.     This lawsuit highlighted the issues of safety and defects within the Devices, yet Defendant refused to fix, or even acknowledge, any issues.[31]

*Lawsuits throughout the Country*

48.     In addition to the Class Action suit previously mentioned, Defendant has been sued by numerous other individuals suffering roughly the same set of injuries due to the same set of issues.[32]

---

[29]https://www.tiktok.com/@onewheel/video/7168510386629659947?_r=1&_t=8gYxEyD4Wxn
[30] JAMES LOH, et al., Plaintiffs, v. FUTURE MOTION, INC., Defendant. ; 5:21-cv-06088-EJD (N.D. Cal. Jul. 11, 2022)
[31] Id.

49.     In total, nearly 70 lawsuits have been filed throughout the country with many extensive injuries.[33]

*The Consumer Product Safety Commission's announcement of Danger, Eventual Recall*

50.     On November 16, 2022, The CPSC issued a warning, stating that the Devices were dangerous.[34]

51.     Instead of remedying the issues, Defendant combatted the CPSC and stated that the Products, in sum, were not dangerous.[35]

52.     Defendant promoted this messaging via TikTok, with its CEO saying that OneWheel Devices are "disproportionately misunderstood", rather than "disproportionately dangerous".[36]

53.     Further, Defendant critiqued the CPSC's recall, stating that the CPSC has not adequately described any defect with the Devices.

54.     OneWheel's spokesperson says: "The U.S. Government is trying to shut down our company. Here's the story. So a few days ago, the CPSC put out this statement saying that we have to recall every single one wheel that's ever been made. We said, 'no thank you.'"[37]

55.     And, in the same video post, Defendant critiques the CPSC's recall, saying that the CSPC fails to acknowledge any single technical element.

56.     In sum, Defendant is no more than cherry picking and attempting to straw-man the CPSC.

---

[32] Exhibit A.
[33] Id.
[34] https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Warns-Consumers-to-Stop-Using-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Ejection-Hazard-At-Least-Four-Deaths-and-Multiple-Injuries-Reported
[35] https://www.tiktok.com/@onewheel/video/7168510386629659947?_r=1&_t=8gYxEyD4Wxn
[36] Id.
[37] Id.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Negligence: Design Defect**

57.     Plaintiff repeats and realleges the allegations in Paragraphs 1-56 above, as if fully set forth herein.

58.     At all relevant times, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing and supplying the Devices and otherwise placed the Devices used by Plaintiff into the stream of commerce.

59.     Plaintiff is an expected user or consumer of the Devices.

60.     At all times, Defendant held final design approval authority for the Devices.

61.     The Devices were conveyed in a condition not contemplated by reasonable persons among those considered expected users of consumers of the Devices.

62.     Safer, feasible and suitable alternatives to the Devices that were available to Defendant have existed at the time of manufacture and conveyance that do not present the same frequency or severity of risks as do the Devices.

63.     The Devices' design defects caused the Devices to function in a manner that results in a failure of the user to balance, including but not limited to sudden and unexpected nosedives.

64.     The Devices' design is excessively dangerous.  The burden of implementing safer, feasible and alternative designs would not have outweighed the reduction of injury caused to consumers, including Plaintiff.

65.     At the time of manufacture and conveyance, the Devices failed to meet the minimum safety expectations of the ordinary user and consumer.

66.     The ordinary user and consumer would not consider the Devices sufficiently safe given the risks and dangers of the Devices.

67.     The aforementioned and foreseeable risks exceed and outweigh the benefits Defendant purports the Devices provide, that benefit being safe and effective transportation.

68.     Defendant knew or should have known Plaintiff could foreseeably suffer injury as a result of the defective design of the Devices.

69.     The Device Plaintiff used, at the time conveyed, was not in conformity with the generally recognized standards applicable to the safety of the single-wheel Devices at the time they were designed, manufactured, packaged, labeled, and/or sold.

70.     The Device sold to Plaintiff was not reasonably safe for its intended uses and was defective as described herein with respect to its design.

71.     Defendant has a duty to individuals, including Plaintiff, to use reasonable care in designing, marketing, labeling, packaging and selling the Devices.

72.     Defendant breached its duty to Plaintiff by failing to exercise due care under the circumstances.

73.     Defendant also breached its duty by failing to use reasonable care to employ cost-effective, reasonably feasible alternative designs in the design and/or manufacturing of the Devices.

74.     As a direct and proximate result of Defendant's conduct, including actions, omissions and misrepresentations, Plaintiff sustained economic losses, noneconomic losses including physical and mental pain and sufferance, and other damages.

**SECOND CAUSE OF ACTION**
**Negligence: Failure to Warn**

75.     Plaintiff repeats and realleges the allegations in Paragraphs 1-56 above, as if fully set forth herein.

76.     At all relevant times, Defendant was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing the Devices in the regular course of business.

77.     At all relevant times, including the time of sale and consumption, Defendant failed to include adequate and proper warnings and/or instructions regarding the defects in its Devices and risk of injury associated with regular and foreseeable use of the Devices.

78.     Defendant had a duty to exercise reasonable care in the advertising and sale of the Devices, including a duty to warn and instruct Plaintiff of the dangers associated with use of the Devices that were known or should have been known to Defendant at the time of sale of the Devices to Plaintiff.

79.     Defendant knew or should have known Plaintiff could foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care in providing adequate warnings as described herein.

80.     Defendant breached its duty to Plaintiff by failing to exercise due care under the circumstances.

81.     The Devices were not reasonably safe for their intended uses and were defective as described herein as a matter of law due to their lack of appropriate and necessary warnings. Specifically, Defendant negligently failed to provide sufficient or adequate warnings to Plaintiff regarding the hazards associated with the devices.

82.     Defendant, by excising reasonable diligence, could have made such warnings available to Plaintiff.

83.     As a direct and proximate result of Defendant's failure to provide Plaintiff with sufficient or adequate warnings, Plaintiff was not adequately informed of the potential dangers and/or defects of the Devices.

84.     Had Plaintiff been adequately warned of the unreasonable dangers and risks of the Devices, Plaintiff would not have purchased or used the Devices.

85.     As a direct and proximate result of Defendant's conduct, including actions, omissions and misrepresentations, Plaintiff sustained economic losses, noneconomic losses including physical and mental pain and sufferance, and other damages.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty

86.     Plaintiff repeats and realleges the allegations in Paragraphs 1-56 above, as if fully set forth herein.

87.     Defendant marketed and sold the Devices into the stream of commerce with the intent the Devices would be purchased and/or used by consumers, including Plaintiff.

88.      Defendant expressly warranted, advertised and represented to consumers, including Plaintiff, that the Devices were safe and appropriate for use.

89.     Defendant made these express warranties regarding the Devices' quality and fitness for use in writing through its website, advertisements and marketing materials and on the Devices' packaging and labels.  These express warranties become part of the basis of the bargain that consumers, including Plaintiff, entered into upon purchasing the Devices.

90.     Defendant's advertisements, warranties, representations, and omissions regarding health risks associated with the Devices were made in connection with the sale of the Devices to consumers, including Plaintiff.  Plaintiff justifiably relied on Defendant's advertisements,

warranties, representations, and omissions regarding the Devices in deciding whether to purchase and/or use the Devices.

91.     At the time of making such advertisements, warranties, representations, and omissions, Defendant knew or should have known that the Devices do not conform to these representations because the Devices pose risks of serious injury.

92.     Defendant's Devices do not conform to Defendant's advertisements, warranties, representations, and omissions in that they are not safe and appropriate for use and pose risks of serious injury.

93.     Defendant therefore breached its express warranties by placing Devices into the stream of commerce and selling them to consumers, when use posed health and safety risks, had dangerous effects and were unsure, rendering these products unfit for their intended purpose, and unsuitable for use as marketed by Defendant.  These health and safety risks substantially impair the use, value, and safety of the Devices, and render them worthless.

94.     These health and safety risks associated with the use of the Devices existed when they left Defendant's possession or control and were sold to Plaintiff.  The dangers associated with the use of the Devices was undiscoverable by Plaintiff at the time of purchase of the Devices.

95.     As manufacturers, marketers, advertisers, distributors and sellers of the Devices, Defendant had exclusive knowledge and notice of the fact that the Devices did not conform to the affirmations of fact and promises.

96.     In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations and omissions to induce consumers, including Plaintiff, to rely on such representations and omissions.

97. Defendant's affirmations of fact and promises and its omissions were material, and Plaintiff reasonably relied upon such representations and omissions in purchasing and/or using the Devices.

98. Plaintiff has performed all conditions precedent to Defendant's liability for its breach of express warranty.

99. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff has been damaged because he did not receive the Device as specifically warranted by Defendant. Plaintiff did not receive the benefit of the bargain and suffered damages at the point of sale stemming from his payment for the Devices.

100. As a direct and proximate result of Defendant's conduct, Plaintiff sustained economic losses, noneconomic losses including physical and mental pain and sufferance, and other damages.

101. Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

102. Plaintiff repeats and realleges the allegations in Paragraphs 1-56 above, as if fully set forth herein.

103. Defendant is a merchant engaging in the sale of goods to consumers, including Plaintiff.

104. Plaintiff was a foreseeable user of the Devices, and reasonably expected to use the Devices.

105. At all times mentioned herein, Defendant manufactured or supplied the Devices, and prior to the time the Devices were purchased or used by Plaintiff, Defendant impliedly warranted to him that the Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmation of fact and omissions made on the Devices' labels and packing, including that the Devices were safe and appropriate for use. Plaintiff relied on Defendant's promises and affirmations of fact and omissions when he purchased and used the Devices in a foreseeable manner normally intended, recommended, promoted and marketed by Defendant.

106. At the time of making such implied warranties, Defendant knew or should have known that the Devices do not conform to these representations because the Devices were not safe and pose risks of serious injury, which Defendant did not adequately warn about, thus making the Devices unreasonably unsafe for their intended purpose.

107. Plaintiff, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

108. Defendant breached its implied warranties by selling Devices that failed to conform to the promises or affirmations of fact made on the packing or label, as use of each of the Devices was accompanied by the risks of serious injury.

109. At all relevant times, Plaintiff was in privity with Defendant because Defendant impliedly warranted to consumers, including Plaintiff through warranting, packaging, advertising, marketing and labeling that the Devices were safe for use.

110. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages in that the purchased Devices are worth less than the price he would have paid

and he would not have purchased or used them had he known the attendant risks associated with the use of the Devices.

111.    As a direct and proximate result of Defendant's conduct, Plaintiff sustained economic losses, noneconomic losses including physical and mental pain and sufferance, and other damages.

112.    Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## FIFTH CAUSE OF ACTION
### Fraudulent Misrepresentation

113.    Plaintiff repeats and realleges the allegations in Paragraphs 1-56 above, as if fully set forth herein.

114.    Defendant concealed from and failed to disclose to consumers, including Plaintiff, that the Devices were not safe for use.

115.    Defendant intentionally, knowingly and recklessly made these misrepresentations and omissions to induce consumers, including Plaintiff, to purchase the Devices.

116.    Defendant knew that its representations and omissions about the Devices were false in that the Devices are not safe for use.  Defendant knowingly allowed its packaging, labels, advertisements, promotional materials and websites, described above, to intentionally mislead consumers, including Plaintiff.

117.    Plaintiff did in fact rely on these omissions and misrepresentations and purchased and used the Devices to his detriment throughout the time period of 2018-2021.  Given the deceptive manners in which Defendant advertised, represented and otherwise promoted the

Devices, Plaintiff's reliance on Defendant's omissions and misrepresentations was reasonable and justifiable.

118.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages in that he purchased the Devices (a) that were worth less than the price he paid, (b) which he would not have purchased or used at all had he known the health risks associated with the use of the Devices, and (c) which do not conform to the Devices' marketing campaign, packaging and labels.

119.    Plaintiff seeks actual damages, attorneys' fees, and costs.  Plaintiff also seeks punitive damages, and any other just and proper relief available under the laws.

**<u>SIXTH CAUSE OF ACTION</u>**
**Negligent Misrepresentation**

120.    Plaintiff repeats and realleges the allegations in Paragraphs 1-56 above, as if fully set forth herein.

121.    Defendant had a duty to consumers, including Plaintiff, to exercise reasonable and ordinary care in developing, testing, manufacturing, marketing, distribution and sale of the Devices.

122.    Defendant breached its duty to Plaintiff by developing, testing, manufacturing, advertising, marketing, distributing and selling products to Plaintiff that did not have the qualities, characteristics and suitability for use as advertised by Defendant and by failing to promptly remove the Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health and safety risks of the Devices.

123.    Defendant knew or should have known that the qualities and characteristics of the Devices were not as advertised or suitable for their intended use and were otherwise not as

warranted and represented by Defendant. Specifically, Defendant knew or should have known that the use of the Devices was accompanied by risks of serious injury and death.

124.     Plaintiff relied on Defendant's omissions and misrepresentations and purchased and used the Devices to his detriment throughout the time period of 2018-2021. Given the deceptive manners in which Defendant advertised, represented and otherwise promoted the Devices, Plaintiff's reliance on Defendant's omissions and misrepresentations was reasonable and justifiable.

125.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages in that he purchased the Devices (a) that were worth less than the price he paid, (b) which he would not have purchased or used at all had he known the health risks associated with the use of the Devices, and (c) which do not conform to the Devices' marketing campaign, packaging and labels.

126.     Plaintiff seeks actual damages, attorneys' fees, and costs, and any other just and proper relief available under the laws.

### SEVENTH CAUSE OF ACTION
**Violation of NC Consumer Protection Statute**
**N.C. Gen. Stat.§ 75-1.1 (a)**

127.     Plaintiff incorporates Paragraphs 1-56 as if fully set forth herein.

128.     North Carolina General Statute § 75-1. I (a) declares unfair and deceptive acts or practices in or affecting commerce unlawful.

129.      At all times relevant hereto, Defendant was engaged in activities affecting commerce in this state and beyond this state. The actions of Defendant as alleged herein were acts affecting commerce within the meaning of Chapter 75 of the North Carolina General Statutes.

130.    Defendant's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including Plaintiff to his detriment.

131.    Defendant repeatedly advertised for the Devices on Defendant's websites, and through national advertising campaigns, among other items, that the Devices were safe and fit for use.  Defendant failed to disclose the material information that the Devices were unsafe and unfit for use.

132.    Defendant's unfair and deceptive business practices include, but are not limited to:

a.    Misrepresentations regarding the worthiness, fitness, and merchantability of the Onewheel board it manufactured, in which any defect was hidden and unknowable, which endangered every person who used a Device;

b.     Failing to honor the provisions of its warranties, express and implied, over a lengthy time, despite having actual knowledge of any defect;

c.    Other willful, wanton, reckless, intentional, and wrongful acts as set forth in this Complaint.

133.    Plaintiff relied upon the representations made by Defendant that the Onewheel was merchantable and safe for its intended use and upon the warranty issued by Defendant.

134.    As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff suffered damages by purchasing the Devices because he would not have purchased or used the Devices had he known the truth.

135.    Defendant's deceptive acts and practices caused injury in fact and actual damages to Plaintiff in the form of the loss or diminishment of the value of the Devices Plaintiff purchased and used.

136.    Plaintiff seeks relief under N.C. Gen. Stat. § 75-1.1, *et seq.*, including but not limited to injunctive relief, damages, treble damages and attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment

137.    Plaintiff incorporates Paragraphs 1-56 as if fully set forth herein.

138.    Plaintiff conferred a substantial benefit unto Defendant through Plaintiff's purchase of the Device.  Defendant knowingly and willingly accepted and enjoyed this benefit.

139.    This benefit was not a gift, donation, or other gratuitous benefit.

140.    Defendant either knew or should have known that the payment rendered by Plaintiff was given with the expectation that the Device would have the qualities, characteristics and suitability for use represented and warranted by Defendant.  As such, it would be, and is, unjust, unlawful, and inequitable for Defendant to retain, or continue to retain, this benefit under the circumstances.

141.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff.

142.    Plaintiff is entitled to recover from Defendant all benefits wrongfully collected and improperly retained by Defendant, plus interest thereon.

143.    Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests

that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

B. Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

C. Scheduling a trial by jury in this action;

D. Awarding pre-judgment and post-judgment interest on any amounts awarded, as permitted by law;

E. Awarding costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

F. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a

jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: November 8th, 2023

Respectfully Submitted,

*/s/ Blake G. Abbott*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
Blake G. Abbott (N.C. Bar No. 57190)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222

Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
        blake.abbott@poulinwilley.com